(12 Misc. Rep. 316.)

## MANDER v. LOW et al.

(Supreme Court, Special Term, New York County. April, 1895.)

1. WILLS—CONSTRUCTION—TRUST ESTATE.

   Testator directed that the rents of his real estate after paying taxes, etc., should be used in paying off mortgages thereon, and "after all mortgages are paid * * * the property I bequeath to the children of my son W.," the rents and profits to go to W. for life. The will further provided that the executors might, if they deemed proper, sell the property and reinvest the proceeds, "and then divide it as before mentioned, share and share alike." *Held*, that testator's intention was to create a trust in the property, and, on foreclosure of one of the mortgages referred to in the will, the surplus arising on the foreclosure sale could not be reached by W.'s creditors.

2. TRUSTS—POWER OF TRUSTEE TO BIND ESTATE.

   A contract made by a trustee, though for the benefit of the trust estate, is the personal contract of the trustee, and does not bind the estate, unless its condition was such as to demand the expenditure for its protection or preservation.

Action by Louisa Mander against Charles W. Low and William J. Cromwell, as executors, and others.

T. B. Milliken, for executors.

Andrew G. Cropsey, for receiver.

Wingate, Cullen & Miller, for judgment creditors.

BEEKMAN, J. Jacob Cromwell died, leaving a will by which he devised the premises 288 Front street and 226 East Twelfth street, in this city, and the premises 234 and 236 Van Brunt street, in the city of Brooklyn, to the children of his son, William J. Cromwell. As part of the same clause, however, the testator gave the following directions in reference to the property:

"The rents thereof, after paying taxes, interest, repairs, insurance and all other charges that they be thereon both in Brooklyn and New York, shall be used in paying off the mortgages on the Brooklyn property, next in paying off the mortgages on 288 Front street, and last in paying off the mortgage on 226 East Twelfth street, New York. After all mortgages are paid and canceled of record, the property I bequeath to the children of my son, William J. Cromwell, the rents and profits thereof after paying all charges against the property together with all encumbrances shall go to my son, William J. Cromwell, so long as shall live, for his own use and benefit, and his death the property shall go directly to his children, share and share alike. But if my executors shall deem proper, by depreciation in value or otherwise, the avails thereof shall be invested in good bonds and mortgages on real estate, and then be divided as before mentioned, share and share alike."

I have quoted the clause in ipsissimis verbis. It is evidently the work of the testator's own hand,—quite inartificial and somewhat ungrammatical, but expressing with tolerable clearness his intention. The mortgage on No. 288 Front street, instead of having been paid off out of the rents, as directed by the testator, has been foreclosed, the property sold, and a surplus has been realized amounting to over $5,000. Two claims have been made to portions of this fund,—one by the receiver of William J. Cromwell, under a judgment recovered against him for the payment of the amount of the judgment out of

the surplus moneys; the other by certain creditors of the executors of Jacob Cromwell, who have recovered a judgment against the executors, as such, and insist that they had, therefore, a lien upon the real estate, and consequently now have one upon the surplus moneys realized upon its sale.

The question first arises, had William J. Cromwell any interest in the surplus which can be reached by the receiver? It may well be claimed that, as he was to enjoy only the income of the property after payment of the principal of the mortgages, the income from the surplus moneys should be impounded to make good the appropriation which has been made of the corpus of the estate for the discharge of the mortgage in the foreclosure proceedings. In that view of the case, William's interest in the income would be quite remote, and hardly computable. There would be practically nothing which would be available for the receiver. But there is, I think, another theory which also excludes him from any interest, and that is that the title to the property really vested, under the will, in the testator's executors in trust for the purposes of the devise during the lifetime of William. The duties to be performed in the application of the income were such as properly to require the intervention of a trustee, with the powers associated with the office for leasing the property, and making thereout the income necessary to carry out the directions of the testator for its appropriation. The intention to create a trust is, I think, also reflected in the last clause of the will, which reads as follows:

"I hereby appoint for my executors or trustees to attend to the distribution of my estate and property, as set forth, my son, William J. Cromwell, my son-in-law, Charles W. Low, and my friend Stephen Cutter, with powers and duties as trustees or executors of this my last will and testament to be performed by those who shall serve or act, and all the estate of one or more who shall serve or not, shall be fully vested in power and trust as above mentioned, and his or their acts shall have full power and binding force and be fully vested in power and trust:"

The language is that of a half-educated man with a very definite purpose, which, unfortunately, he has undertaken to express in technical form, but without the capacity to do it. However, I think it is plain that he intended the property in question to be held in trust during the lifetime of his son, William. It might almost be said that his testamentary scheme could scarcely be carried out in any other way. It has been repeatedly held that no set form of words is necessary to constitute a devise in trust, but that whether such an estate exists, or not, is a matter of construction, upon a consideration of the intent of the testator, gathered from the whole will. Morse v. Morse, 85 N. Y. 53; Ward v. Ward, 105 N. Y. 68, 11 N. E. 373. Especially is this true where the will is the handiwork of a testator unskilled in the technique of the law. If I am correct in this view, then the title to the property was vested in the executors in trust, for the purposes specified, during the life of William, upon whose decease it is to vest in possession in his children living at the time of testator's decease, with power in the executors, on the happening of that event, should they deem it proper so to do, to invest "the avails" of the property (and, by necessary implication, to sell

the same for that purpose) in bonds and mortgages, and divide the same among said children, share and share alike. This very direction furnishes a further indication of the intent and expectation entertained by the testator that his executors should take an active part in the care and handling of the property in question. The view taken is, I think, much more consistent with the purpose of the testator than to hold that his son, William, had a legal estate for life in the property, especially as the latter was to enjoy only an ultimate interest in the rents, after the discharge of the mortgagees affecting all of the property devised. As, under this construction of the will, the testator's son, William, took no interest which could be reached by his creditors,—at least, upon the facts as they appeared on the reference in this proceeding,—it follows that the receiver is not entitled to participate. in any form, in the surplus moneys which must be paid to the executors, to be held by them upon the trusts above mentioned. The referee, however, found that the moneys should be so paid, subject to the claim of the judgment creditors of the executors before mentioned. It appears from a certified copy of the judgment roll, among the exhibits in this proceeding, that an action was brought in this court by the claimants, Thomas Munkenbeck and others, against Charles W. Low, William J. Cromwell, and Stephen Cutter, "as executors and trustees under the last will and testament of Jacob Cromwell, deceased." The complaint sets forth that at the request of the defendants the plaintiffs performed certain work and supplied certain materials in the construction of a sewer upon certain premises in Van Brunt street, Brooklyn, of which the testator had died seised; that the value of such work was $167.25, of which but $9 had been paid. Judgment is then demanded against defendants for the amount so due. The defendants made default in pleading, and suffered judgment to be entered against them. The postea reads that the plaintiffs "have judgment for and do recover of the defendants Charles W. Low, William J. Cromwell, and Stephen Cutter, as executors and trustees under the last will and testament of Jacob Cromwell, deceased, the sum of one hundred and eighty-one 90-100 dollars, together with twenty-two 95-100 dollars costs and disbursements, amounting in the whole to the sum of two hundred and four 94-100 dollars, and that the plaintiffs have execution therefor against the defendants in their representative capacity." Upon this leave was obtained from the surrogate to issue execution against the executors to collect from the assets of the estate, and subsequently an order was obtained for the examination of one of the executors as a third party, who was alleged to have some of the property of the judgment debtors in his possession. This somewhat startling procedure now culminates in the present claim for satisfaction of the judgment out of these surplus moneys. The answer to it is quite conclusive. In the first place, the judgment in question never was, and never could have been, a lien upon the real estate out of which the surplus moneys were made. It is well-settled law in this state that the contracts of executors, although made in the interest and for the benefit of

the estate they represent, if made upon a new and independent consideration, as for services rendered, goods or property sold and delivered, or other consideration moving between the promisee and the executors, as promisors, are the personal contracts of the executors, and do not bind the estate, although the executors could properly pay for the same, and be allowed the amount, as a legitimate expenditure on a settlement of their accounts. Austin v. Munro, 47 N. Y. 360; Railroad Co. v. Gilbert, 44 Hun, 201. As was said by Judge Allen in Austin v. Monro:

"The principle is that an executor may disburse and use the funds of the estate for purposes authorized by law, but may not bind the estate by an executory contract, and thus create a liability not founded upon a contract or obligation of the testator. The rule is too well established in this state to be questioned or disregarded, and any departure from it would be mischievous."

Section 1814 of the Code has made no change in this rule. Bingham v. Bank, 41 Hun, 377. The above principle applies equally to trustees vested with the title to property upon an express trust. There is, however, this qualification: that where the condition of the estate demands for its protection or preservation the expenditure of money which the trustee is unable to provide, it may not be doubted that he has the power to pledge the credit of the trust estate to provide for its necessities, and to agree that the person with whom he contracts shall have a charge upon the property for his reimbursement. But such a charge is one which can be enforced only in an equitable action (Willis v. Sharp, 113 N. Y. 586, 21 N. E. 705), upon evidence of the necessity for the relief, and of the providence of the contract, and upon such equitable terms as the court may prescribe. A case somewhat illustrating this principle may be found in Trust Co. v. Roche, 116 N. Y. 120, 22 N. E. 265. The lien so acquired is practically one which is subject to the approval of the court.

The facts in the present case in no wise bring it within the excepted class. It appears from some of the papers in evidence that the work done was rendered necessary by order of the health board, but the complaint does not declare upon any pledge of the property of the estate or lien acquired thereon by agreement with the trustees. The action was the ordinary one at law for work performed, and the judgment taken was a common-law one for the recovery of a sum of money. It did not bind the real estate in question. The statutory provisions under which the proceedings were had before the surrogate, and leave obtained from him to issue execution, do not apply to claims of this character, and in any event the surrogate had no power to authorize an execution against the real property of the testator. Code Civ. Proc. § 1823. If the counsel for the claimants relies upon the proceedings before the surrogate as creating a charge upon the property by virtue of the execution so authorized, he must take them with the qualification contained in the above section.

It is quite plain from what has been said that the judgment in question, and the proceedings thereon, do not establish any claim to the fund in question. It therefore follows that the finding of the

referee that the surplus moneys are subject to the judgment in question is erroneous. The whole of such moneys must be paid, without any charge upon them, to the executors of Jacob Cromwell, to be held by them as trustees under the clause of the will containing the devise in favor of William Cromwell and his children. The order should contain appropriate provisions setting out the findings upon the rights and claims of the parties in conformity with this opinion. The order should be presented for settlement on notice.